IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

| | |
|---|---|
| RELIANCE INSURANCE COMPANY, | ] |
| | ] |
| Plaintiff, | ] |
| | ] |
| v. | ] CV-02-BE-0968-S |
| | ] |
| ZURICH U.S. and VALIANT | ] |
| INSURANCE COMPANY, | ] |
| | ] |
| Defendants. | ] |

**MEMORANDUM OPINION**

This case came before the court on motion for summary judgment filed by Defendant Valiant Insurance Company (doc. # 27). The issue has been fully briefed, and the court held oral argument on May 5, 2004. For the reasons stated on the Record and summarized below, the Defendant's Motion for Summary Judgment is DENIED, and instead, the court GRANTS summary judgment in favor of Plaintiff Reliance Insurance Company.[1]

Undisputed Facts

This case presents a claim for subrogation and reimbursement by Reliance Insurance Company against Valiant Insurance Company.[2] Reliance provided insurance coverage to Birmingham Southeast (BSE). Valiant provided a commercial general liability policy to Electric

---

[1] Plaintiff Reliance filed a Motion for Summary Judgment (doc. # 33) that was stricken as untimely (doc. # 52). However, when the issue has been fully briefed by both sides, and no surprise would result, a court may *sua sponte* grant summary judgment to the non-moving party. *See Artistic Entertainment v. City of Warner Robbins*, 331 F.3d 1196, 1201-02 (11th Cir. 2003).

[2] "Zurich U.S." was originally named as a defendant, but the parties agreed at pretrial conference that no such entity exists and it was dismissed. (See Order doc. # 51.) The parties also agreed that Valiant Insurance Company is the correctly named defendant.

1

Machine Control (EMC), policy CMM 17213498. In September 1998, BSE contracted with EMC for EMC to perform certain electrical work at BSE's Cartersville plant. As part of that contract, EMC agreed to provide insurance listing BSE as an additional insured.[3] EMC also agreed to indemnify BSE, except for BSE's sole negligence.[4]

---

[3]
<u>Insurance Information</u>

> Before a Contractor will be permitted to start work, the Contractor must supply an insurance certificate from an insurance company acceptable to BSE, LLC Risk Management Department. The insurance certificate must list BSE, LLC as an additional insured and provide that the coverage is primary coverage for BSE, LLC.
>
> The following requirements are the minimum that will be accepted as coverage for contractors performing work on BSE, LLC property. In some situations, additional and/or special coverage may be required.
>
> Occurrence Form Commercial General Liability with a general aggregate of $1,000,000 per occurrence, including products and completed operations aggregate of not less than $1,000,000 each occurrence. . . .
>
> . . .Excess Liability extending in excess of all primary policies not less than $5,000,000.

Plaintiff's Ex. 1, BSE/EME Contract, App. K.

[4]
<u>Indemnification</u>

> Contractor [EMC]shall indemnify, defend and hold harmless Owner [BSC] and its agents, officers, directors and employees from and against all liability, claims, damages, loss, cost, expense or claim, including, without limitation any awards, judgments, decrees, attorneys' fees, court costs and costs of appellate proceedings, arising or resulting from, or caused in whole or in part by (i) performance of the Work, [or] (ii) negligent acts or omissions of the Contractor or any of its subcontractors, consultants or engineer retained by the Contractor, or any of their partners, directors, officers, employees or agents or anyone for whose acts the Contractor may be liable as it relates to the Work, whether such liability, claims, damages, loss, costs, expense, or claims is due in part or claimed to be due to any negligence of the Owner or its partners, agents, officers, directors, or employees. . . .

On March 30, 1999, while EMC was performing work at BSE's plant, Ed Carter, a certified electrician and owner of EMC, sustained injuries that ultimately led to his death. Suit was filed against BSE and others for Carter's injuries and death. BSE requested Valiant to defend and indemnify BSE, but Valiant refused to do so, claiming that BSE was not insured under its policy. BSE, Reliance, and others ultimately settled the Carter suit.

Reliance now seeks a declaration that BSE was an insured under the Valiant policy, that Valiant had a duty to defend and indemnify BSE, and that Reliance is entitled to recover the costs of the defense and indemnification that it provided to BSE when Valiant refused to do so.

Counsel for both parties agreed at oral argument that the facts as stated above are undisputed. Counsel for Valiant also added facts concerning arbitration/mediation proceedings that, although not disputed, the court finds are irrelevant to a determination of the issues presented in this case.

Because no genuine issue of material fact exists, the question for the court becomes

---

> In addition, Contractor shall hold harmless and indemnify the Owner from and against all liability, claims, and damages arising out of or resulting from the performance of the Work, provided that such liability, claims and General Damages (i) are attributable to bodily injury, sickness, disease or death, or to injury to or destruction of tangible property, including the loss of use resulting therefrom, and (ii) are caused by an act or omission of the Contractor, a Contractor's Representative, an Affiliate, any Subcontractor, or any Person directly or indirectly employed by any of them or any Person for whose acts any of them may be liable. . . .
>
> Nothing contained in this Article or this Agreement shall constitute, or be construed as, an agreement of Contractor to indemnify Owner for Owner's sole negligence in violation of the laws of the state of Georgia.

Plaintiff's Ex. 1, BSE/EMC Contract § 7.11.

whether either party is entitled to judgment as a matter of law.[5]  Fed. R. Civ. P. 56(c).

Discussion

First, the court notes the recent decision by Judge Blackburn in *Birmingham Southeast LLC v. Zurich U.S. and Valiant Insurance Co.*, CV-01-B-2460-S (April 1, 2004). That case involved the same insurance policy issued by Valiant to EMC that is at issue in this case. Judge Blackburn addressed precisely two of the issues before this court: (1) whether BSE was an insured under the Valiant policy, and (2) whether Valiant had a duty to defend BSE in the Carter suit. Judge Blackburn resolved those questions against Valiant.

Reliance, the insurer of BSE, was not a party to the case before Judge Blackburn, but its right to subrogation derives from BSE's rights to coverage. Also, Judge Blackburn's case only addressed BSE's right to recover the costs of defense it incurred, and did not address any claim for reimbursement of amounts spent by BSE's insurers to settle the Carter suit. In this case, Reliance seeks to recover both costs of defending BSE when Valiant refused to do so, and the amount it paid to settle the Carter suit on behalf of BSE.

The court finds that because of the identity of issues and parties, the decision by Judge Blackburn carries preclusive effect.[6] Thus, in accordance with Judge Blackburn's decision in *Birmingham Southeast LLC v. Zurich U.S.*, CV-01-B-2460-S (April 1, 2004), this court finds that Reliance's insured BSE was also an insured under the policy issued by Valiant to EMC, that the

---

[5] *See* fn. 1.

[6] The court finds that all four elements to claim preclusion have been met here: "(1) a final judgment on the merits; (2) rendered by a court of competent jurisdiction; (3) identity of parties; and (4) identity of causes of action." *Twigg v. Sears Roebuck & Co.*, 153 F.3d 1222, 1225 (11th Cir., 1998).

allegations of the Carter suit fell within the scope of coverage of that policy and no exclusions applied, and that Valiant owed a duty to defend BSE in the Carter suit.

Alternatively, if issue preclusion does not operate here, the court independently finds, for the reasons stated on the Record and below that BSE was an insured under the Valiant policy and was entitled to a defense by Valiant of the Carter suit, the allegations of which fell within the scope of coverage and were not excluded from coverage.

Specifically, the court finds that BSE met the requirements specified in the policy to qualify as an insured.[7] EMC, the named insured on the Valiant policy, agreed to provide insurance coverage to BSE and also agreed to assume BSE's tort liability "caused in whole or in part by performance of the work...". The contract between BSE and EMC qualifies as an "insured contract"[8] because EMC agreed to assume the tort liability of BSE. Further, BSE's

---

[7]
Section II - WHO IS AN INSURED

3. With respect to COVERAGE A. BODILY INJURY AND PROPERTY DAMAGE LIABILITY and COVERAGE B. PERSONAL AND ADVERTISING INJURY LIABILITY, any person or organization with whom you agree, because of a written "insured contract" or permit to provide insurance such as is afforded under this policy is an insured, but only with respect to liability arising out of your operations, "your work" or facilities owned or used by you.

Plaintiff's Ex. 2, Valiant policy, Sec. II.

[8]
"Insured contract" means:
. . .
f. That part of any other contract or agreement pertaining to your business (including an indemnification of a municipality in connection with work performed for a municipality) under which you assume the tort liability of another party to pay for "bodily injury" or "property damage" to a third person or organization. Tort liability means a liability that would be imposed by law in the absence of any contract or agreement. . . .

liability for Carter's injuries and death arose out of EMC's operations and work. Thus, Valiant owed a defense to BSE, which it failed to provide. Because Reliance stands in the shoes of its insured, and incurred defense costs that rightfully should have been borne by Valiant, Valiant must reimburse Reliance for those costs. The exact amount that Valiant must reimburse Reliance will be determined after subsequent submissions.

As counsel for Valiant notes, the duty to defend is broader than the duty to pay, and a finding of a duty to defend does not automatically mean an insurer has a duty to indemnify the insured. To determine whether an insurance company must indemnify its insured under the terms of coverage, the court must look beyond the mere allegations of the complaint and ordinarily should consider the actual facts established. Valiant argues that the court in this case must consider the proceedings in the underlying wrongful death action, and two ancillary proceedings: a collection action filed by EMC against BSE in Jefferson County Circuit Court; and an arbitration proceeding initiated by BSE against EMC in Georgia. Because BSE did not litigate the question of whether Carter's death was caused by EMC's negligence in any of those three proceedings, [9] Valiant argues that Reliance is barred from raising in this proceeding BSE's

---

Plaintiff's Ex. 2, Valiant policy, Sec. V.

[9]Initially, Valiant argued that whether it owed indemnity to BSE was controlled by the language of the indemnity agreement between BSE and EMC, and that BSE's failure to litigate the issue of whose negligence cause Carter's death in prior proceedings precluded resolution of that issue here. *See* Defendants' Response to Plaintiff's Cross-motion for Summary Judgment, Doc. # 42, p. 10. After oral argument where the court indicated its ruling but before issuance of any order, counsel for Valiant submitted its "Motion of Defendant Designated as Valiant Insurance Company for Reconsideration and/or to Alter or Amend Pursuant to Rule 59(e) F.R.C.P." (Doc. # 55). In that motion, counsel switched course and argued that BSE's failure to litigate in the three prior proceedings the question of whether Carter's death <u>arose out of EMC's work</u> operates as issue preclusion here. The court disagrees. Whether Carter's death arose out of EMC's work was not relevant to any of the issues involved in the other actions. Furthermore, the releases signed as a result of mediation of those other proceedings specifically reserved to BSE the <u>right</u> to pursue reimbursement from EMC's insurer under policies covering BSE.

right to indemnification from EMC.

This argument ignores three key points. First, this case involves a claim for <u>indemnification under an insurance policy</u>. No where does the policy require that coverage for an insured like BSE, who is an insured by virtue of an insured contract, applies only if the named insured, EMC, caused the accident for which BSE bears liability. The indemnity agreement between BSE and EMC does not control the terms of the insurance coverage available to BSE under the Valiant policy; that agreement merely qualifies BSE for coverage because it established an "insured contract," but it does not dictate the <u>scope</u> of coverage.

The only policy limitation at issue on BSE's coverage requires that BSE's liability "arise[s] out of your [EMC's] operations, 'your work' or facilities owned or used by you." While Alabama courts have not yet addressed the effect of this policy language, the court believes great value lies in considering the reasoning of courts of other jurisdictions on this issue. *See e.g., Knight v. Beverly Health Care Bay Manor Health Care Center*, 820 So. 2d 92 (Ala. 2001) (recognizing appropriateness of looking to other jurisdictions on questions of first impression). In particular, the court finds persuasive the opinion in *Admiral Ins. Co. v. Trident NGL, Inc.*, 988 S.W.2d 451, 454 (Tx. App. 1999), which provides in relevant part:

> [For] liability to 'arise out of operations' of a named insured it is not necessary for the named insured's acts to have 'caused' the accident; rather, it is sufficient that the named insured's employee was injured while present at the scene in connection with performing the named insured's business, even if the cause of the injury was the negligence of the additional insured.

This court agrees; BSE's liability clearly "arose out of" the operations of EMC, for the

---

Also, BSE's right to coverage under the Valiant policy does not depend on whether BSE had a right to indemnity or contribution from EMC under their contract.

purposes of this policy. However, the issue of whether BSE's liability for Carter's death arose out of EMC's work is not the same as whether BSE's liability arose from EMC's negligence, in part or in whole. In other words, whether EMC had any contractual obligation to indemnify BSE under the terms of their contract does not determine whether Valiant has an obligation to indemnify BSE, and consequently Reliance, under the terms of the insurance policy that provided coverage to BSE.

Second, the settlement agreements and releases in those proceedings, although releasing EMC, reserved to BSE the right to pursue reimbursement from EMC's insurers under the insurance policy.[10] Thus, BSE clearly preserved the right to litigate questions involving coverage under the Valiant policy, including whether liability for Carter's death arose out of EMC's work. Releasing EMC from an obligation for indemnity under the terms of the contract between EMC & BSC does not in anyway affect BSE's, and through it Reliance's, right to coverage under the policy of insurance issued by Valiant because coverage does not depend on EMC's contractual indemnity obligation.

Third, Valiant owed BSE a duty to defend it in the Carter suit, a duty which it breached. Certain consequences flow from an insurance company's breach of its duty to defend. When an insurance company has breached the duty to defend, its rights to challenge the action of the insured in settling a case or to re-litigate the underlying suit are limited.

Carter's injuries resulted from work EMC was performing at BSE's Cartersville, Georgia plant pursuant to the contract between BSE and EMC. The contract between BSE and EMC

---

[10] "BSE does not release and specifically reserves its right to assert any claims against Zurich US, but nothing herein shall be construed as a right of BSE to pursue any further claims against EMC or its shareholders." Defendants' Exhibit V, p. 2.

provided that EMC would furnish electrical engineering and would install modifications to automation equipment at BSE's Cartersville plant. Carter, a certified electrical engineer, was working on an electrical cabinet at the BSE plant when an explosion occurred, resulting in injuries that ultimately led to his death. But for the BSE/EMC contract, and but for EMC's work in furtherance of that contract, Carter would not have been on the job at the BSE plant, he would not have been injured, and BSE would not have faced any liability for Carter's death. Thus, the liability for which Reliance on behalf of BSE seeks indemnification under the Valiant policy arose out of the work of EMC, Valiant's named insured. Because BSE's liability falls squarely within coverage and is not excluded,[11] Valiant owed indemnification to BSE and, therefore, owes reimbursement to Reliance for the settlement payments it made on behalf of its insured BSE.

Two issues not briefed by the parties preclude a final adjudication of this matter. The parties had not briefed the question of which of the two insurance policies, Reliance or Valiant, provide primary coverage for this loss. The parties also have not addressed the amount of reimbursement to which Reliance is entitled. The court reminds counsel for Valiant that, having breached its duty to defend, its right to challenge the reasonableness of the settlement of the Carter suit is substantially limited. A briefing schedule on these issues has been entered by separate order.

A separate order in conformity with this opinion will be entered contemporaneously.

---

[11] See on the Record discussion of why none of the policy exclusions apply.

DONE and ORDERED this 25th day of June, 2004.

_____
KARON OWEN BOWDRE
UNITED STATES DISTRICT JUDGE